OPINION
Anthony Roberts was indicted on two counts of involuntary manslaughter and two counts of aggravated vehicular homicide. The charges arose out of an incident occurring June 29, 1999, when Roberts drove his pickup truck into the rear of a pickup truck occupied by Robert and Violet Ardrey, who were stopped at the intersection of Woodman Drive and Dorothy Lane in Kettering, Ohio. The Ardreys expired from the injuries sustained in the collision of Roberts' truck with their truck. The trial court merged each conviction for involuntary manslaughter with the companion conviction for aggravated vehicular homicide and imposed concurrent four-year sentences on the merged counts.
On appeal, Roberts advances three assignments of error.
 "1. THE TRIAL COURT IMPROPERLY ALLOWED THE PROSECUTOR TO COMMIT PROSECUTORIAL MISCONDUCT WHICH WAS PREJUDICIAL TO DEFENDANT'S RIGHT TO A FAIR TRIAL."
Roberts advances four contentions under this assignment of error.
 1.
Roberts first complains that the trial court impermissibly permitted the prosecutor in closing rebuttal argument to allude to the fact that he had had a single vehicle accident with his truck in 1997. The theory of the prosecution was that the collision was the culmination of road rage on Roberts' part which commenced at the intersection of Dorothy Lane and Wilmington Pike and ended with the fatal collision at Dorothy Lane and Woodman Drive. The theory of the defense was that Roberts had suffered an epileptic seizure which absolved him of criminal responsibility.
The offenses of aggravated vehicular homicide required the jury to find beyond a reasonable doubt that Roberts recklessly caused the deaths of Robert and Violet Ardrey. The trial court instructed the jury, without objection, that "(w)hen deciding the issue of recklessness, the jury may consider whether any epileptic seizure rendering defendant unconscious was foreseeable." The State had presented the testimony of Kettering Police Department Officer Jeff Geckler, without objection, that Officer Geckler had investigated a single vehicle accident on October 23, 1997, wherein the defendant claimed he had blacked out and hit a utility pole, but had told the officer he had no medical condition that would have caused him to black out.
The aggravated vehicular homicide charges required the State to prove recklessness. During her closing rebuttal argument, the prosecutor stated, without objection, "He was put on warning. He had already wrapped his truck around a pole before. And if you wanna believe he had a seizure, fine. If you wanna believe he just drove off the road for whatever reason, fine. Either way he knew. And as long as he knew, and he's havin' seizures as much as he was havin' seizures, that's recklessness, ladies and gentlemen."
Here, the prosecutor was arguing that even assuming defendant's theory of the case — that he had suffered an epileptic seizure — he was nevertheless reckless because he had previously experienced an epileptic episode causing him to black out while he was driving. No objection having been made to this argument, it is waived unless the argument arises to the level of plain error. In our judgment, there was no error, much less plain error.
 2.
Roberts next claims that the prosecutor impermissibly discussed the instructions of law which were properly the province of the court and not the prosecutor. Specifically, Roberts contends that the prosecutor had no business discussing the instruction as to foreseeability. During its instructions, the trial court stated "(t)he defendant is also responsible for the natural and foreseeable consequences or results that follow in the ordinary course of events from the act." Over objection, the prosecutor had argued "(a)nd for you to find the defendant not guilty of aggravated vehicular homicide and involuntary manslaughter, you have to believe that he had a seizure and it wasn't foreseeable. There was no way he could ever guess that getting behind a car, he could cause a crash. No way that he could have a seizure. . . . There's no way . . . That's what you need to believe. You have to believe that there was no foreseeability. He had no clue . . . That's what you need to find the defendant not guilty on. And you have to believe that he wasn't reckless."
The prosecutor in essence said that to find the defendant not guilty, the jury had to find that his suffering a seizure while driving was unforeseeable to him. That was a fair comment on the evidence, and it was consistent with the court's instructions as to foreseeability. The trial court did not err in permitting the prosecutor to allude to the instructions it would eventually give. Permitting the prosecutor to discuss the applicable law was not an abdication of the trial court's responsibility to instruct the jury. Both sides are permitted to apply the applicable law to the particular facts of the case during closing argument so long as the argument is accurate as to the applicable law and to the facts in evidence.
 3.
Roberts next claims that the prosecutor impermissibly called him a liar. The documentary evidence disclosed that on an application for an operator's permit in January, 1997, Roberts answered "no" to a question "(a)re you now or have you ever been afflicted with epilepsy or subject to convulsions, fainting spells or loss of muscular control?" This was obviously a false answer which, the prosecutor argued, demonstrated his awareness of the risk his driving created. The evidence had established that an affirmative answer would have resulted in certain restrictions on Roberts' operating privileges. This was legitimate argument.
 4.
Finally, Roberts contends that the prosecutor impermissibly suggested that he was willing to plead guilty to vehicular homicide negligently causing death while operating a motor vehicle and that the trial court failed to give a curative instruction notwithstanding the trial court's statement in chambers after the jury instructions, in denying a motion for mistrial, that it had given an appropriate curative instruction.
The exchange in question is as follows:
 "MS. HIETT (Prosecutor): They want you to go with Negligence. And I wanna . . .
"MR. RION (Defense Counsel): Objection.
 "MS. HIETT: They're offerin' the lesser-included Negligence.
 "JUDGE TUCKER: The Court the Court, based upon the evidence is offering that, so I would sustain that objection.
"MS. HIETT: Okay.
"JUDGE TUCKER: Please move along, Ms. Hiett."
The prosecutor clearly misspoke. A defendant clearly has a right to request the trial court to instruct on a lesser included offense where such an instruction is supported by the evidence. Such a request, if made, cannot be used by the prosecutor in closing argument to argue that the defendant is admitting to some criminal liability. At no time did defense counsel or anyone else inform the jury that Roberts was willing to plead guilty to vehicular homicide. Indeed, defense counsel concluded his final argument with a request that the jury return a not guilty verdict on the lesser included offense of vehicular homicide. It was improper for the prosecutor during her rebuttal argument to suggest otherwise. Nevertheless, we believe it highly unlikely that the jury interpreted the prosecutor's remarks as stating that the defendant had offered to plead guilty to vehicular homicide. The court did sustain the objection and said that it was "offering that," i.e., an instruction on vehicular homicide, based on the evidence, which it did.
The trial court's statement to the effect that it was offering negligent homicide in its instructions appears to be the curative instruction the trial court later alluded to. Regardless of whether this was an adequate curative instruction, the fact remains that Roberts did not request a curative instruction when the offending remark was made and, as we have stated previously, we doubt very much that the jury interpreted the remarks as a statement that Roberts was willing to plead guilty to vehicular homicide.
The first assignment of error is overruled.
 "2. THE CONVICTION SHOULD BE REVERSED BECAUSE THE CONVICTION WAS AGAINST THE WEIGHT EVIDENCE."
We have examined the entire record in this case and conclude that the jury verdicts are neither against the manifest weight of the evidence nor based on insufficient evidence.
The State was the only party to present eyewitnesses. The State's witnesses essentially testified as follows. Roberts was in a full size pickup truck in front of Cathi Tschirhart at the intersection of Wilmington Pike and Dorothy Lane as they waited for a green light for eastbound traffic on Dorothy Lane. After the light turned green, Roberts proceeded east on Dorothy Lane toward Woodman drive at a speed well under the posted limit. Tschirhart, who was driving a Porsche, passed Roberts on the right and moved back into Roberts' lane, ahead of him. Roberts then closed on Tschirhart, tail-gating her car and zigzagging repeatedly within the same lane of travel that both vehicles occupied. Witnesses described Roberts driving as controlled and deliberate. Roberts moved into the left turn lane and passed Tschirhart, striking her left rear quarter panel in the process. After returning to Tschirhart's lane, Roberts speed increased and the zigzagging resumed. After sideswiping another car, Roberts stopped zigzagging but continued to speed toward the intersection of Dorothy Lane and Woodman, where several vehicles were stopped, including the pickup truck occupied by the Ardreys. As he approached, Roberts moved toward the left turn lane as if to avoid the stopped vehicles, but he struck the Ardrey's truck, causing a chain reaction collision of several cars.
Roberts had had an epileptic condition from childhood. Based on a hypothetical question that tracked the State's evidence as to how the accident occurred, a medical doctor specializing in epilepsy opined that the collision was not the result of Robert's having suffered an epileptic seizure. The defense contended that an epileptic seizure was the only explanation for the collision.
The trial court instructed the jury that if Roberts were unconscious prior to the collision due to an epileptic seizure, that would constitute a defense to involuntary manslaughter proximately causing death as a result of failing to maintain an assured clear distance: 2903.04(B). The trial court further instructed that the jury could consider whether Roberts' driving, given his medical condition, was reckless, an essential element of aggravated vehicular homicide: R.C. 2903.06(A). The jury found Roberts guilty of both involuntary manslaughter and aggravated vehicular homicide. It thus appears that the jury rejected the defense position that the collision was caused by Roberts suffering an epileptic seizure.
Other than a general claim that the State's evidence was "widely divergent . . . contradictorily (sic) through out . . . and admitted although highly prejudicial or in cases hearsay, over objection", Roberts does not state with any specificity how the jury's verdicts are either against the manifest weight of the evidence or based on insufficient evidence. We have reviewed the record with these complaints in mind and find nothing that persuades us of the merit of this assignment.
The second assignment is overruled.
 "3. THE TRIAL COURT ERRED IN ALLOWING IN PREJUDICIAL AND IRRELEVANT EVIDENCE."
Roberts fails to say what evidence was improperly admitted, or how its admission was prejudicial. This disregard of the requirements of App.R. 16(7) permits us to disregard this assignment App.R. 12(A)(2).
The third assignment is overruled.
The judgment is affirmed.
BROGAN, J., and GRADY, J., concur.